1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                  EASTERN DISTRICT OF CALIFORNIA

11

12   DREW GARDNER,                    No.  2:14-cv-02730 JAM CMK

13            Plaintiff,

14       v.                           **ORDER GRANTING IN PART AND
                                      DENYING IN PART STATE**
15   CALIFORNIA HIGHWAY PATROL;       **DEFENDANTS' MOTION TO DISMISS**
     CALIFORNIA HIGHWAY PATROL        **AND GRANTING IN PART AND DENYING**
16   OFFICER J.J. FISCHER; TEHAMA     **IN PART COUNTY DEFENDANTS'**
     COUNTY SHERIFF'S DEPARTMENT;     **MOTION TO DISMISS**
17   TEHAMA COUNTY SHERIFF'S
     DEPARTMENT DEPUTY
18   INVESTIGATOR ED McCULLOUGH;
     KENNETH MILLER; and DOES 1 -
19   50,

20            Defendants.

21

22       This matter is before the Court on Defendants California

23   Highway Patrol ("Defendant CHP") and J.J. Fischer's ("Defendant

24   Fischer") (collectively, "State Defendants") motion to dismiss

25   (Doc. #34) Plaintiff Drew Gardner's ("Plaintiff") First Amended

26   Complaint ("FAC") (Doc. #33).  Also before the Court is

27   Defendants Tehama County ("Defendant County") and Ed McCullough's

28   ("Defendant McCullough") (collectively, "County Defendants")

                                      1

1   motion to dismiss (Doc. #36) the FAC.  Plaintiff opposed both

2   State Defendants' (Doc. #35) and County Defendants' (Doc. #41)

3   motions.  Both State Defendants and County Defendants replied

4   (Doc. #42; Doc. #43).  For the following reasons, State

5   Defendants' motion is granted in part, and denied in part, and

6   County Defendants' motion is granted in part, and denied in

7   part.[1]

8

9       I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

10      On January 2, 2014, Plaintiff was riding as a passenger in a

11  Jeep Wrangler that had been reported stolen.  FAC ¶¶ 17-18.  Upon

12  seeing a police car, the driver of the Jeep abandoned the car and

13  told Plaintiff to do the same.  FAC ¶ 19.  Defendant Fischer, an

14  officer with Defendant CHP, apprehended Plaintiff and took him

15  into custody.  FAC ¶ 20.  Soon thereafter, Plaintiff was booked

16  into Tehama County Jail.  FAC ¶ 27.

17      Following Plaintiff's arrest, Defendant Fischer wrote a

18  Patrol Report ("Report").  FAC ¶ 21.  In the Report, Defendant

19  Fischer wrote that, during Plaintiff's booking, he had

20  confiscated a "clear white baggie with a white crystalline

21  substance" – which tested positive for methamphetamine – from

22  Plaintiff's jacket.  FAC ¶ 27.  Plaintiff alleges that this

23  statement was one of many lies that Defendant Fischer made while

24  writing the Report.  FAC ¶¶ 21-28.

25  ///

26

27  [1] This motion was determined to be suitable for decision without
    oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28  scheduled for June 3, 2015.

2

1    The following day, January 3, 2014, Defendant McCullough – a
2  deputy investigator with the Tehama County Sheriff's Department –
3  was tasked with conducting an investigation of this incident.
4  FAC ¶ 31.  Defendant McCullough interviewed Plaintiff, who told
5  him that he was a passenger in the car and had been offered a
6  ride by Charles Jacob Steele, whom "he had just met at a mutual
7  friend's house."  FAC ¶ 33.  Plaintiff informed Defendant
8  McCullough that, prior to his arrest, they had stopped at a car
9  dealership and a gas station, and that witnesses at both
10 locations could confirm that he was not the driver of the stolen
11 vehicle.  FAC ¶¶ 34-35.  McCullough followed up on both of these
12 leads, and spoke with a witness at the car dealership.  FAC ¶ 36.
13 The witness picked Plaintiff out of a photo line-up, and
14 identified him as the passenger of the vehicle.  FAC ¶ 37.  At
15 this time, Defendant McCullough "failed to alert anyone at the
16 Tehama [County] District Attorney's office, the Tehama County
17 Jail, or the Shasta County Sheriff's department" of these
18 exculpatory findings.  FAC ¶ 38.

19    On January 6, 2014, Plaintiff was charged with: (1) unlawful
20 driving or taking of a vehicle; (2) receiving stolen property –
21 motor vehicle; (3) driving under the influence; (4) bringing
22 contraband into the jail; (5) possession of a controlled
23 substance; and (6) carrying a dirk or dagger.  FAC ¶ 41.
24 Plaintiff was arraigned on these charges, Defendant Miller was
25 assigned to be his public defender, and the Court ordered him
26 detained on $315,000 bail.  FAC ¶ 43.

27 ///

28 ///

3

1   On January 8, 2014, Defendant McCullough resumed his

2   investigation and visited the gas station at which Plaintiff

3   claimed to have stopped before his arrest.  FAC ¶ 44.  He

4   obtained video surveillance from the date of the incident, and

5   observed that Plaintiff was the passenger in the vehicle.  FAC

6   ¶¶ 44-45.  Defendant McCullough wrote up a report of his findings

7   ("the McCullough Report"), but this report "was not sent or was

8   not timely sent" to the Tehama County District Attorney's Office.

9   FAC ¶ 45.  Plaintiff further alleges that the McCullough Report

10  "failed to make its way to the Tehama County District Attorney's

11  Office" during the period that Defendant Miller represented

12  Plaintiff, which ended on February 25, 2014.  FAC ¶¶ 48-49.

13  On January 21, 2014, Plaintiff (represented by Defendant

14  Miller) waived his right to a preliminary hearing.  FAC ¶ 48;

15  Doc. #40, Ex. B.  On February 7, 2014, Plaintiff's mother

16  retained private counsel to represent Plaintiff.  FAC ¶ 50.  On

17  February 25, 2014, Plaintiff fired his public defender, Defendant

18  Miller.  FAC ¶ 48.

19  Plaintiff's retained counsel conducted an investigation and

20  discovered substantially the same exculpatory information that

21  Defendant McCullough had learned through his official

22  investigation.  FAC ¶¶ 50-54.  On March 12, 2014, Plaintiff's

23  retained counsel sent a letter summarizing his findings to the

24  Tehama County District Attorney's Office.  FAC ¶ 55.  That same

25  day, the Tehama County District Attorney provided Plaintiff - and

26  retained counsel - with a copy of the McCullough Report.  FAC ¶

27  56.  On March 17, 2014, the three vehicle-related counts against

28

4

1  Plaintiff were dropped.  FAC ¶ 57.  Plaintiff remained in custody

2  on the three booking-related pending charges.  FAC ¶ 58.

3      On April 1, 2014, Plaintiff "persuaded Sargeant [sic]

4  Baulkin at the Tehama County Jail to look at the booking video."

5  FAC ¶ 59.  The video showed that Plaintiff was not wearing the

6  jacket in which Defendant Fischer claimed to have found a "baggie

7  of meth" during booking.  FAC ¶ 59.  Instead, the video showed

8  that Defendant Fischer carried the jacket into the booking room.

9  FAC ¶ 59.  On April 21, 2014, the remaining counts relating to

10 Plaintiff's booking were dismissed.  FAC ¶ 60.  Plaintiff was

11 released that same day, after spending 110 days in custody.  FAC

12 ¶ 60.

13     On March 30, 2015, Plaintiff filed the FAC, which includes

14 the following causes of action:

15     (1) Fourteenth Amendment due process violation for

16 deprivation of liberty against Defendant Fischer and Defendant

17 McCullough, brought pursuant to 42 U.S.C.

18 § 1983;

19     (2) Fourteenth Amendment due process violation for

20 deprivation of liberty against Defendant CHP and Defendant

21 County, brought pursuant to 42 U.S.C. § 1983;

22     (3) Fifth Amendment due process violation for unlawful

23 arrest against Defendant Fischer and Defendant McCullough,

24 brought pursuant to 42 U.S.C. § 1983;

25     (4) Fifth Amendment due process violation for unlawful

26 arrest against Defendant CHP and Defendant County, brought

27 pursuant to 42 U.S.C. § 1983;

28     (5) Eighth Amendment violation for cruel and unusual

1   punishment against Defendant Fischer and Defendant McCullough,

2   brought pursuant to 42 U.S.C. § 1983;

3      (6) Eighth Amendment violation for cruel and unusual

4   punishment against Defendant CHP and Defendant County, brought

5   pursuant to 42 U.S.C. § 1983;

6      (7) violation of 42 U.S.C. § 1983 against Defendant CHP;

7      (8) violation of 42 U.S.C. § 1983 against Defendant County;

8      (9) intentional withholding of evidence against Defendant

9      McCullough;

10     (10) intentional infliction of emotional distress ("IIED")

11     against Defendant Fischer;

12     (11) negligent infliction of emotional distress ("NIED")

13     against Defendant Fischer, Defendant Miller, and Defendant

14     McCullough;

15     (12) false imprisonment against Defendant CHP, Defendant

16     Fischer, Defendant McCullough, and Defendant County;

17     (13) professional negligence against Defendant Miller; and

18     (14) malicious prosecution against Defendant Fischer.

19     As Defendant Miller is not a moving party on the motions

20     before the Court, only the facts relevant to the State

21     Defendants' motion and the County Defendants' motion are

22     summarized above.

23

24                 II.   OPINION

25     A.   Judicial Notice

26     County Defendants request that the Court take judicial

27  notice of two documents which are not attached to the FAC:

28

1  (1) Defendant Fischer's Probable Cause Declaration, dated January

2  2, 2014; and (2) Plaintiff's Waiver of Preliminary Hearing, dated

3  January 21, 2014.  County Defendants' Request for Judicial Notice

4  ("CDRJN"), Doc. #37.  Plaintiff opposes County Defendants'

5  request, arguing that the consideration of documents not included

6  in the complaint is improper on a motion to dismiss.  Opp. at 3.

7       As a general rule, the Court "may not consider any material

8  beyond the pleadings in ruling on a Rule 12(b)(6) motion."  <u>Lee</u>

9  <u>v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001).

10 However, the Court may take judicial notice of "matters of public

11 record," provided that they are not subject to reasonable

12 dispute.  <u>Id.</u> at 689.  Similarly, on a motion to dismiss, the

13 Court "may consider evidence on which the "complaint necessarily

14 relies if: (1) the complaint refers to the document; (2) the

15 document is central to the plaintiff's claim; and (3) no party

16 questions the authenticity of the copy attached to the 12(b)(6)

17 motion."  <u>Daniels-Hall v. Nat'l Educ. Ass'n</u>, 629 F.3d 992, 998

18 (9th Cir. 2010) (internal citations omitted).

19      The first document offered by County Defendants – Defendant

20 Fischer's Probable Cause Declaration – meets the standard set

21 forth by the Ninth Circuit in <u>Daniels-Hall</u>: it was referenced in

22 the FAC at paragraph 30, it is central to Plaintiff's claim, and

23 its authenticity is not questioned.  The second document offered

24 by County Defendants – Plaintiff's Waiver of Preliminary Hearing

25 – is a public court record and is not subject to reasonable

26 dispute.  Accordingly, County Defendants' request for judicial

27 notice is GRANTED.

28

7

B.    Discussion

    1.    State Defendants' Motion to Dismiss

        a.    Second, Fourth, Sixth, and Seventh Causes of
Action – § 1983 Claims against Defendant CHP

State Defendants argue that Plaintiff's second, fourth, sixth, and seventh causes of action against Defendant CHP must be dismissed because CHP is not a "person" amenable to suit under § 1983.  State Mot. at 5.  State Defendants note that, for purposes of a § 1983 action, states and state agencies are not defined as "persons" and therefore cannot be sued under the statute.  State Mot. at 6.  Plaintiff acknowledges that Defendant CHP is not a "person" within the meaning of § 1983, but maintains that CHP can be sued under Monell, as a governmental entity.  Opp. to State at 2.  In their reply, State Defendants argue that Monell applies only to municipal entities, and not to the State of California or its agencies, including CHP.  State Reply at 2.

In pertinent part, 42 U.S.C. § 1983 reads as follows:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  The Supreme Court has held that Congress intended "municipalities and other local government units to be included among those persons to whom § 1983 applies."  Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690 (1978).  However, in Will v. Mich. Dept. of

1    State Police, the Supreme Court expressly limited the reach of

2    Monell, noting that "it does not follow that if municipalities

3    are person then so are states."  491 U.S. 58, 70 (1989).  Thus,

4    the Court held that "neither a State nor its officials acting in

5    their official capacities are 'persons' under § 1983."  Id. at

6    71.  Therefore, neither the State of California nor its state

7    agencies can be subject to a § 1983 Monell claim.  See Orsoco v.

8    Cal., 2013 WL 3146820, at *3 (E.D. Cal. June 18, 2013) (holding

9    that "defendants State of California and CHP cannot be sued under

10   section 1983," even under a Monell theory of liability); Townsend

11   v. State of Cal., 2010 WL 1644740, at *6 (E.D. Cal. April 21,

12   2010) (noting that "the State and CHP, an arm of the State, are

13   not subject to section 1983 claims.").

14       The parties do not dispute that CHP is an agency of the

15   State of California.  Cal. Gov. Code § 11000.  As a state agency,

16   CHP is neither a "person" within the meaning of § 1983, Will, 491

17   U.S. at 71, nor amenable to suit under Monell.

18        State Defendants' Motion to Dismiss Plaintiff's second,

19   fourth, sixth, and seventh causes of action, to the extent those

20   claims are brought against Defendant CHP, is therefore GRANTED

21   WITHOUT LEAVE TO AMEND.  See Eminence Capital, LLC v. Aspeon,

22   Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with

23   prejudice and without leave to amend is not appropriate unless it

24   is clear on de novo review that the complaint could not be saved

25   by amendment." (citing Chang v. Chen, 80 F.3d 1293, 1296 (9th

26   Cir. 1996)).

27

28

b.   <u>Tenth and Eleventh Causes of Action – IIED
and NIED – against Defendant Fischer</u>

State Defendants argue that Plaintiff's tenth and eleventh

causes of action for intentional infliction of emotional distress

("IIED") and negligent infliction of emotional distress ("NIED")

against Defendant Fischer must be dismissed because he is immune

from liability under California Government Code § 820.2.  State

Mot. at 6-7.  Specifically, State Defendants argue that, under

§ 820.2, Defendant Fischer is not liable for the injuries that

result from his discretionary decisions, including his decision

to arrest Plaintiff.  State Mot. at 6-7.  Plaintiff argues that

Defendant Fischer is not entitled to immunity under § 820.2,

because that statute applies only to discretionary policy

decisions and not to operational decisions, such as decisions to

arrest.  Opp. to State at 6-7.  In reply, State Defendants note

that Plaintiff's authority only concerns § 820.2 immunity for

false arrest, not IIED or NIED.  State Reply at 3.  However,

State Defendants do not provide any additional authority, and

appear only to have repeated their argument, verbatim, from their

opening brief in support of the motion to dismiss.  <u>Compare</u> State

Reply at 3 (lines 15-20), <u>with</u> State Mot. at 7 (lines 7-13).

California Government Code § 820.2 provides that, "[e]xcept

as otherwise provided by statute, a public employee is not liable

for an injury resulting from his act or omission where the act or

omission was the result of the exercise of the discretion vested

in him, whether or not such discretion be abused."  The Ninth

Circuit has held that "section 820.2 immunity does not apply to

10

an officer's decision to detain or arrest a suspect." Liberal v. Estrada, 632 F.3d 1064, 1084 (9th Cir. 2011) (citing Gillan v. City of San Marino, 55 Cal. Rptr. 3d 158, 174 (Cal. Ct. App. 2007)).  In so holding, the Ninth Circuit reasoned as follows:

> Immunity is reserved for those *basic policy decisions* [which have] . . . been [expressly] committed to coordinate branches of government, and as to which judicial interference would thus be unseemly.  A police officer's decision to detain or arrest a suspect is not a basic policy decision, but only an operational decision by the police purporting to apply the law.

> Id. at 1084-85 (alterations in original) (internal citations omitted).

     As such, it is beyond dispute that § 820.2 immunity does not apply to false arrest or false imprisonment.  See Opp. at 6; reply at 3.  However, the Ninth Circuit has not reached the precise issue of whether § 820.2 immunity applies to claims for IIED or NIED, when such claims arise from false arrest or false imprisonment.  See Liberal, 632 F.3d at 1091.n2.

     The cases cited by State Defendants do not support their argument that § 820.2 immunity applies to IIED and NIED claims. See Mot. at 7 (citing Posey v. State, 180 Cal. App. 3d 836 (1986) and Bonds v. Sate of Cal. (*ex rel.* Cal. Highway Patrol), 138 Cal.App.3d 314 (1982)).  In Posey, the court held that the "inspection and removal of disabled vehicles are discretionary acts and are therefore covered by the statutory immunities as set forth in Government Code section 820.2."  Posey, 180 Cal.App.3d at 848.  Similarly, in Bonds, the court held that a "decision to remove or not to remove a stranded vehicle, without more, is thus a discretionary action and comes within the immunity described in

1  Government Code section 820.2." <u>Bonds</u>, 138 Cal.App.3d at 322

2  (citations omitted).  Neither of these cases involved IIED or

3  NIED (or even false arrest) claims and they are inapplicable to

4  the case at bar.

5       Given the lack of applicable Ninth Circuit authority on this

6  point, and in light of State Defendants' failure to cite any

7  authority addressing the applicability of § 820.2 to IIED and

8  NIED claims, the Court finds that State Defendants have failed to

9  meet their burden in moving to dismiss the IIED and NIED claims

10 arising from false arrest.

11      State Defendants' reliance on § 818.8 is also misplaced.

12 California Government Code § 818.8 provides that "[a] public

13 entity is not liable for an injury caused by misrepresentation by

14 an employee of the public entity, whether or not such

15 misrepresentation be negligent or intentional."  However, § 818.8

16 immunity applies only to misrepresentations that interfere with

17 financial or commercial interests.  <u>See</u> <u>Johnson v. State</u>, 69 Cal.

18 2d 782, 800 (1968) ("In short, 'misrepresentation,' as a tort

19 distinct from the general milieu of negligent and intentional

20 wrongs, applies to interferences with financial or commercial

21 interest.").  Neither party claims that a misrepresentation

22 occurred regarding a financial or commercial interest, and

23 § 818.8 is, therefore, inapplicable.  <u>See</u> Opp. at 7; Reply at 3.

24      Similarly, State Defendants' reliance on § 820.8 is

25 unavailing.  California Government Code § 820.8, in pertinent

26 part, provides that, "[e]xcept as otherwise provided by statute,

27 a public employee is not liable for an injury caused by the act

28 or omission of another person."  However, State Defendants do not

12

1   explain which other person's act or omission Defendant Fischer is

2   seeking immunity from.  Opp. to State at 7; see also State Reply

3   at 3.  Therefore, § 820.8 also does not apply.

4        For the reasons stated above, State Defendants' Motion to

5   Dismiss Plaintiff's tenth and eleventh causes of action, to the

6   extent those claims are brought against Defendant Fischer, is

7   DENIED.

8              c.   Twelfth Cause of Action – False Imprisonment
                    – against Defendant CHP

9

10       State Defendants argue that Plaintiff's twelfth cause of

11  action for false imprisonment must be dismissed, to the extent it

12  is brought against Defendant CHP, because Plaintiff fails to

13  identify a statutory basis for liability against Defendant CHP as

14  required by California Government Code § 815.  State Mot. at 6.

15  In his opposition, Plaintiff argues that California Government

16  Code § 815.2(a) provides a statutory basis for liability against

17  Defendant CHP under the doctrine of respondeat superior, such

18  that it can be held liable for Defendant Fischer's false

19  imprisonment of Plaintiff.  Opp. to State at 4-5.

20       California Government Code § 815(a) provides that, "[e]xcept

21  as otherwise provided by statute: . . . [a] public entity is not

22  liable for an injury, whether such injury arises out of an act or

23  omission of the public entity or a public employee or any other

24  person."  Accordingly, "in California all government tort

25  liability is dependent on the existence of an authorizing statute

26  or 'enactment.'"  Searcy v. Hemet Unified Sch. Dist., 177

27  Cal.App.3d 792, 802 (1986) (citations omitted).  The existence of

28  a statutory duty (along with all other facts essential to the

1   existence of statutory liability) must be pleaded with
2   particularity.  Id. (citing Susman v. City of L.A., 269
3   Cal.App.2d 803, 809 (1969)).  Accordingly, "[s]ince the duty of a
4   governmental agency can only be created by statute or
5   'enactment,' the statute or 'enactment' claimed to establish the
6   duty must at the very least be identified" in the complaint.  Id.
7        With regard to the twelfth cause of action against Defendant
8   CHP, Plaintiff has failed to identify a statutory basis for
9   Defendant CHP's tort liability.  Comp. ¶¶ 112-20.  This
10  deficiency is fatal to his claim.  See Ramsey v. City of Lake
11  Elsinore, 270 Cal. Rptr. 198, 205 (Cal. Ct. App. 1990) (approving
12  dismissal of claim where the plaintiff "did not identify any
13  statute, ordinance or resolution on which the City's liability
14  could be based"); see also Helstern v. City of San Diego, No. 13-
15  cv-0321, 2013 WL 3515963, at *2-3 (S.D. Cal. July 11, 2013)
16  (dismissing claim, noting that, although the plaintiff
17  "identifie[d] the statute her complaint is missing" in her
18  opposition brief, "these statutes belong in [her] complaint,
19  where the negligence claim is actually asserted").
20       Accordingly, State Defendants' Motion to Dismiss Plaintiff's
21  twelfth cause of action, to the extent it is brought against
22  Defendant CHP, is GRANTED WITH LEAVE TO AMEND.
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

1         2.    County Defendants' Motion to Dismiss

2             a.    First Cause of Action – § 1983 (Fourteenth

3                 Amendment – Due Process Clause) against Defendant McCullough[2]

4     County Defendants argue that Defendant McCullough is

5 entitled to qualified immunity with regard to Plaintiff's first

6 cause of action, which alleges a violation of the Due Process

7 Clause of the Fourteenth Amendment, brought pursuant to § 1983.

8 County Mot. at 7.  Specifically, County Defendants argue that

9 neither Plaintiff's procedural due process claim, nor his

10 substantive due process claim, is cognizable, because Defendant

11 McCullough is entitled to qualified immunity.  County Mot. at 7.

12 Plaintiff responds that Defendant McCullough is not entitled to

13 qualified immunity, because his conduct violated Plaintiff's

14 clearly established constitutional rights.  Opp. to County at 5.

15     The doctrine of qualified immunity "protects government

16 officials from liability for civil damages insofar as their

17 conduct does not violate clearly established statutory or

18 constitutional rights of which a reasonable person would have

19 known." Messerschmidt v. Millender, 132 S. Ct. 1235, 1244

20 (2012).  In evaluating a defendant's claim of qualified immunity,

21 district courts consider two related questions: First, "taken in

22 

23 _____

[2] To the extent that Plaintiff sues Defendant McCullough in his official capacity, these are claims against Defendant County. Similarly, to the extent that Plaintiff sues the Tehama County Sheriff's Department, these are claims against Defendant County. For purposes of consistency, the Court reads any claims asserted against Defendant McCullough in the FAC as claims against him in his *individual* capacity.  Although Rule 8 of the Federal Rules of Civil Procedure does permit a plaintiff to plead potentially inconsistent claims for relief, it does not permit him to plead *duplicative* claims.  Fed. R. Civ. P. 8; Fontana v. Alpine Cnty., 750 F. Supp. 2d 1148, 1155 (E.D. Cal. 2010).

1   the light most favorable to the party asserting the injury,

2   [whether] the facts alleged show the officer's conduct violated a

3   constitutional right." <u>Saucier v. Katz</u>, 533 U.S. 194, 201

4   (2001).  Second, if the allegations establish that a

5   constitutional violation occurred, courts must consider whether

6   the right was "clearly established" at the time of the violation.

7   <u>Id.</u>

8         Accordingly, the Court first considers whether Plaintiff has

9   alleged sufficient facts to demonstrate that Defendant McCullough

10  violated his constitutional rights.  In the context of

11  Plaintiff's first cause of action for violation of the Due

12  Process Clause of the Fourteenth Amendment, Plaintiff's claims

13  are two-fold: (1) procedural due process; and (2) substantive due

14  process.  In light of Plaintiff's waiver of his right to a

15  preliminary hearing, his procedural due process claim is a non-

16  starter; it cannot be said that "the procedures attendant upon

17  [Plaintiff's pretrial detention] were constitutionally

18  insufficient." <u>Kentucky Dep't of Corr. v. Thompson</u>, 490 U.S.

19  454, 460, 109 S. Ct. 1904, 1908 (1989).  Rather, Plaintiff merely

20  failed to take advantage of the procedures to which he was

21  entitled.  For this reason, Plaintiff cannot maintain a

22  procedural due process claim against Defendant McCullough, and

23  County Defendants' motion to dismiss Plaintiff's first cause of

24  action is GRANTED WITHOUT LEAVE TO AMEND, insofar as Plaintiff

25  has attempted to state a procedural due process claim against

26  Defendant McCulllough.

27        However, Plaintiff's substantive due process claim warrants

28  a closer look.  The Ninth Circuit has held that the Fourteenth

1  Amendment provides "a constitutional right to be free from

2  continued [pretrial] detention after it was or should have been

3  known that the detainee was entitled to release." Lee v. City of

4  Los Angeles, 250 F.3d 668, 683 (9th Cir. 2001).   In a recent case

5  – discussed at length in both parties' briefs – the Ninth Circuit

6  considered a pretrial detainee's substantive due process claim in

7  factual circumstances both similar to, and different from, the

8  case at bar.   Mot. at 9; Opp. at 6 (both citing Tatum v. Moody,

9  768 F.3d 806 (9th Cir. 2014)).

10      In Tatum, the plaintiff (Walker) had been detained, pre-

11 trial, for over two years on robbery charges that were eventually

12 dismissed.   Tatum, 768 F.3d at 809.   Walker brought a § 1983

13 action against the investigating police officers, alleging that

14 their failure to disclose exculpatory evidence to prosecutors

15 violated the Due Process Clause of the Fourteenth Amendment.   Id.

16 at 809.   At his civil trial, Walker presented evidence that two

17 investigating police officers had failed to inform prosecutors

18 that robberies – strikingly similar to those allegedly committed

19 by Walker – continued to occur after Walker was taken into

20 custody.   Id. at 809-811.   The investigating officers also made

21 affirmative misrepresentations to the court and the prosecutor

22 that the string of similar robberies had ceased since Walker's

23 arrest, and failed to inform prosecutors when another man was

24 arrested for the subsequent robberies.   Id. at 812.   The Tatum

25 court held that a due process violation may occur when an

26 individual is subject to "prolonged detention when the police,

27 with deliberate indifference to, or in the face of a perceived

28 risk that, their actions will violate the plaintiff's right to be

17

1  free of unjustified pretrial detention, withhold from the

2  prosecutors information strongly indicative of his innocence[.]"

3  Id. at 814-815.  However, the court specifically noted "the

4  narrowness of the constitutional rule we enforce today, which is

5  restricted to detentions of (1) unusual length, (2) caused by the

6  investigating officers' failure to disclose highly significant

7  exculpatory evidence to prosecutors, and (3) due to conduct that

8  is culpable in that the officers understood the risks to the

9  plaintiff's rights from withholding the information or were

10  completely indifferent to those risks."  Id. at 819-820.  In

11  Tatum, the Ninth Circuit went on to discuss each of these

12  "limitations," as they applied to the specific circumstances of

13  Walker's detention.  Id. at 820-821.

14       As Plaintiff's § 1983 claim for a substantive due process

15  violation entails a necessarily fact-intensive inquiry, the

16  application of Tatum to the present case requires a comparison

17  between the circumstances of Plaintiff's detention and that of

18  Walker in Tatum.  With regard to the first element, Plaintiff was

19  detained for 110 days.  FAC ¶ 60.  Although this period is

20  substantially shorter than the 27 months of pretrial detainment

21  seen in Tatum, it is of sufficient length to "carr[y]

22  constitutional implications."  See Tatum, 768 F.3d at 820 (noting

23  that "a 68-day detention [was] lengthy enough to 'carr[y]

24  constitutional implications'") (citing Russo v. City of

25  Bridgeport, 479 F.3d 196, 209 (2d Cir. 2007)).  As noted by the

26  Supreme Court, "[t]he consequences of prolonged detention may be

27  more serious than the interference occasioned by arrest . . .

28  [because] [p]retrial confinement may imperil the suspect's job,

18

interrupt his source of income, and impair his family relationships." Gerstein v. Pugh, 420 U.S. 103, 114 (1975). County Defendants acknowledge that the length of Plaintiff's confinement "appears constitutionally significant." Mot. at 10. The first Tatum "limitation" is no bar to Plaintiff's substantive due process claim.

With regard to the second element, Plaintiff alleges that the McCullough Report contained the following information: (1) Plaintiff's claim that he was the passenger, not the driver, of the stolen vehicle; (2) an eyewitness' testimony that Plaintiff was the passenger, not the driver, of the stolen vehicle; (3) physical evidence that listed the name and address of the man the eyewitness believed to be the driver; and (4) surveillance video from a gas station, showing Plaintiff exiting and re-entering the passenger seat of the stolen vehicle. FAC ¶¶ 33, 36, 37, 44.  This information was "not merely material but *strongly* indicative of the plaintiff's innocence." Tatum, 768 at 820 (emphasis in original).  Just as in Tatum, the relevant charges were dismissed quickly after the information contained in the McCullough Report was brought to the attention of the prosecutor.  FAC ¶ 57; Tatum, 768 at 820 (noting that, "with minimal further investigation, the evidence prompted the prosecutor to drop all charges against Walker and led the judge to declare Walker factually innocent").  Although it was ultimately Plaintiff's private investigator who brought the information to the prosecutor's attention, the information was largely the same as that contained in the McCullough Report, and the eventual dismissal of the vehicle-related charges supports

19

1   Plaintiff's argument that the report was strongly exculpatory.

2   As County Defendants acknowledge, the second <u>Tatum</u> factor "weighs

3   in [Plaintiff's] favor."  Mot. at 10.

4        Before moving to the third <u>Tatum</u> element, the Court briefly

5   notes that Plaintiff was not immediately released from custody

6   upon the dismissal of the vehicle-related counts.  These counts

7   were dismissed on March 17, 2014, but Plaintiff remained in

8   custody for approximately one additional month, on the booking-

9   related charges.  FAC ¶¶ 57-58.  Plaintiff alleges that, on April

10   1, 2014, he "persuaded Sargeant [sic] Baulkin at the Tehama

11   County Jail to look at the booking video," which disproved

12   allegations that the booking officer "found the baggie of meth in

13   the jacket pocket."  FAC ¶ 59.  (The video shows he was not

14   wearing a jacket.)  FAC ¶ 59.  Finally, on April 21, 2014, the

15   booking-related counts were dismissed and Plaintiff was released

16   from custody.  FAC ¶ 60.  At this early stage in the litigation,

17   it is simply too early to determine whether the dismissal of the

18   vehicle-related charges had a "domino effect," making it easier

19   for Plaintiff to access the booking video and ultimately be

20   released from custody.  What is clear from the face of the FAC is

21   that between January 2, 2014 (when Plaintiff was taken into

22   custody) and March 12, 2014 (when the exculpatory information

23   finally made its way to the prosecutor) Plaintiff was largely

24   ignored by those that had placed him in custody.  After this

25   date, events unfolded quickly and Plaintiff was released within a

26   matter of weeks.  The question of whether Defendant McCullough's

27   failure to disclose the exculpatory evidence "caused" Plaintiff's

28   prolonged pretrial detention may well become a question for the

1   jury; at the very least, it is an issue that is better addressed

2   at the summary judgment stage, after full discovery has been

3   conducted.

4       As to the third Tatum element, the Ninth Circuit noted that,

5   "[i]n the context of a § 1983 suit against police officers for a

6   due process violation, official conduct violates due process only

7   when it shocks the conscience, a standard satisfied in

8   circumstances such as these by conduct that either consciously or

9   through complete indifference disregards the risk of an

10  unjustified deprivation of liberty." Tatum, 768 at 820-821

11  (citations omitted).  In this case, as in Tatum, "the decision

12  whether to disclose or withhold exculpatory evidence is a

13  situation in which actual deliberation is practical, such that

14  deliberate indifference to individual rights – rather than intent

15  to injure – is enough. Id. at 821 (citations omitted).  In

16  Tatum, the Ninth Circuit suggested that the issue of an

17  individual officer's mens rea is generally a question for the

18  jury. Id. at 821 (noting that "[t]he jury's determination that

19  [the individual officer defendants] acted with deliberate

20  indifference or reckless disregard for Walker's rights . . .

21  satisfies the standard applicable to violations of due process").

22  Plaintiff has alleged that Defendant McCullough acted with either

23  "deliberate indifference . . . [by making] a conscious choice to

24  disregard the consequences" of his acts, or with "reckless

25  disregard for Plaintiff's rights and the truth, either by a

26  complete indifference to his rights or acting in the face of a

27  perceived risk that their actions would violate Plaintiff's

28  rights under federal law." FAC ¶ 65.  These allegations are

21

1  sufficient to withstand a motion to dismiss, and the third Tatum

2  "limitation" does not bar Plaintiff's substantive due process

3  claim against Defendant McCullough.

4       Under the three-prong Tatum inquiry, Plaintiff has alleged

5  sufficient facts to show that Defendant McCullough's conduct

6  violated Plaintiff's constitutional rights.  However, because

7  Defendant McCullough has asserted a defense of qualified

8  immunity, the Court must next consider whether the constitutional

9  right in question was "clearly established" at the time of the

10  violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Plaintiff

11  appears to argue that it has long been "clearly established" that

12  a criminal defendant's "due process rights are implicated [when]

13  the state withholds exculpatory evidence from the defense."  Opp.

14  at 6 (citing Brady v. Maryland, 373 U.S. 83 (1963).  This

15  characterization of the right at issue is too broad, especially

16  given the fact that Brady concerns post-conviction, not pretrial,

17  confinement.  See Fontana v. Alpine Cnty., 2011 WL 676922, at *3

18  (E.D. Cal. Feb. 16, 2011) (noting that "plaintiffs who prevail in

19  an underlying criminal action have no Brady-related due process

20  claims under § 1983").  As County Defendants correctly note, the

21  inquiry into whether a right is clearly established "must be

22  undertaken in light of the specific context of the case, not as a

23  broad general proposition."  Brosseau v. Haugen, 543 U.S. 194,

24  198 (2004).  Moreover, Plaintiff cannot rely on the Ninth

25  Circuit's ruling in Tatum, as that opinion was filed on September

26  17, 2014, six to eight months *after* the alleged violation

27  occurred.

28       Nevertheless, well before the time of the alleged violation,

the Ninth Circuit had clearly established the "constitutional right to be free from continued [pretrial] detention after it was or should have been known that the detainee was entitled to release." Lee v. City of Los Angeles, 250 F.3d 668, 683 (9th Cir. 2001).  This right is stated in a sufficiently narrow manner, and, taking Plaintiff's allegations as true, Defendant McCullough's conduct violated this clearly established right. Despite County Defendants' attempt to muddy the waters, this is not a complicated case: if Plaintiff's allegations are correct, Defendant McCullough learned that Plaintiff was most likely not the driver of the stolen vehicle on January 8, 2014, and sat on this information, while Plaintiff languished in Tehama County Jail.  The right to be free from continued pretrial detention, after it is known the detention is unjustified, is clearly established, both in Ninth Circuit case law and in basic principles of common humanity.  At the motion to dismiss stage, Defendant McCullough is not entitled to the defense of qualified immunity on Plaintiff's substantive due process claim.

County Defendants' attempt to distinguish Tatum on the grounds that Defendant McCullough did not affirmatively misrepresent facts to the prosecutor – is unpersuasive.  County Mot. at 11.  In Tatum, the investigating officers did affirmatively misrepresent the fact that the string of similar robberies had ended.  Tatum, 768 at 817.  However, by incorporating "failure to disclose highly significant exculpatory evidence to prosecutors" into its ultimate three-part inquiry, the Ninth Circuit indicated that this fact was not integral to its ruling.  Id. at 819.  Here, Plaintiff alleges that Defendant

1   McCullough did precisely that.  Under Tatum, it is immaterial

2   whether Defendant McCullough affirmatively told the prosecutor

3   that he had confirmed that Plaintiff was the driver of the stolen

4   vehicle, or merely failed to disclose the information he had

5   learned that proved the contrary.  Either is sufficient to

6   establish that he violated Plaintiff's rights.

7        County Defendants argue that Plaintiff's waiver of his right

8   to a preliminary hearing bars his substantive due process claim.

9   County Mot. at 10.  However, as noted above, Plaintiff's waiver

10  of the preliminary hearing bars his procedural due process claim,

11  but not his substantive due process claim.  In Tatum, the Ninth

12  Circuit noted that due process claims based on prolonged pretrial

13  detention generally "fall into at least one of the two

14  categories: (1) the circumstances indicated to the defendants

15  that further investigation was warranted, or (2) the defendants

16  denied the plaintiff access to the courts for an extended period

17  of time."  Tatum, 768 at 816.  The Court went on to characterize

18  Walker's claim as a "variant of the first of those two

19  categories," noting that the officers' "silence in the face of

20  compelling exculpatory evidence breached their duty of disclosure

21  to authorities competent to act on the information."  Id. at 816.

22  In light of this bifurcated approach, a plaintiff need not allege

23  that he was denied "access to the courts for an extended period

24  of time" while being detained pre-trial.  Rather, a separate and

25  cognizable due process claim can be stated by alleging that

26  investigating officers withheld compelling exculpatory evidence.

27  Thus, the availability (and waiver) of a preliminary hearing in

28  this case is immaterial as to the substantive due process claim;

1    Plaintiff's allegations that Defendant McCullough failed to

2    promptly inform the prosecutor of the exculpatory information he

3    obtained in his investigation are sufficient to establish a

4    substantive due process claim.

5         Finally, to the extent that County Defendants invoke the

6    doctrine of quasi-judicial immunity on Defendant McCullough's

7    behalf, this argument is misplaced.  County Mot. at 5.  In this

8    context, quasi-judicial immunity applies to ministerial officers,

9    such as jailors or prison officials, who carry out a court order

10   of confinement.  Engebretson v. Mahoney, 724 F.3d 1034, 1039 (9th

11   Cir. 2013); Rivera v. Cnty. of Los Angeles, 745 F.3d 384, 391

12   (9th Cir. 2014).  Unlike a ministerial prison official, Defendant

13   McCullough had a duty to investigate the facts underlying the

14   court's order of confinement.  It is the breach of this duty

15   which supports Plaintiff's substantive due process claim, and the

16   doctrine of quasi-judicial immunity is inapplicable.

17        For all of these reasons, County Defendants' motion to

18   dismiss Plaintiff's first cause of action, brought pursuant to

19   § 1983 for violation of the Due Process Clause of the Fourteenth

20   Amendment, is DENIED, insofar as Plaintiff states a substantive

21   due process claim against Defendant McCullough.

22              b.   Second Cause of Action - § 1983 (Fourteenth
                     Amendment - Due Process Clause) against
23                   Defendant County

24        County Defendants argue that Plaintiff's second cause of

25   action, brought pursuant to § 1983 and alleging that Defendant

26   County violated the Due Process Clause of the Fourteenth

27   Amendment, must be dismissed because Plaintiff has failed to

28   sufficiently allege his Monell claim.  County Mot. at 13.

1    Specifically, County Defendants argue that Plaintiff's

2    "conclusory and formulaic allegations that a policy, custom or

3    practice exists, without more, [are] insufficient" to satisfy the

4    requirements of Monell.  County Mot. at 13.  Plaintiff maintains

5    that the allegations are not conclusory and argues further that,

6    even if they were, conclusory allegations as to a municipal

7    policy are sufficient to survive a motion to dismiss.  Opp. to

8    County at 9-10 (citing Leatherman v. Tarrant Cnty. Narcotics

9    Intelligence & Coordination Unit, 507 U.S. 163 (1993)).

10       Although a municipality can be sued under § 1983, "it cannot

11   be held liable unless a municipal policy or custom caused the

12   constitutional injury."  Leatherman, 507 U.S. at 166.

13   Accordingly, to state a claim for municipal liability under

14   § 1983, a plaintiff must allege (1) that an official policy or

15   custom existed; (2) that the plaintiff suffered constitutional

16   injury; and (3) the existence of a causal link between the

17   policy/custom and the plaintiff's injury.  Id.  Moreover, each of

18   these elements must be alleged with "sufficient particularity"

19   and general or conclusory allegations will not suffice.  See,

20   e.g., Estate of Brooks ex rel. Brooks v. United States, 197 F.3d

21   1245, 1247 (9th Cir. 1999) (approving the dismissal of a Monell

22   claim, on the grounds that "the complaint did not allege a

23   deliberate County policy with sufficient particularity"); see

24   also, Hass v. Sacramento Cnty. Sheriff's Dep't, 2014 WL 1616440,

25   at *5 (E.D. Cal. Apr. 18, 2014) (granting motion to dismiss where

26   one element of Monell claim was alleged in conclusory manner).

27       In support of his second cause of action, Plaintiff makes

28   the following allegations:

70.   The actions described above committed by
Defendants J.J. Fisher and Ed McCullough either
(1) flowed from an explicitly adopted or a tacitly
authorized municipal policy of Defendants California
Highway Patrol and the Tehama County Sheriff's
Department; (2) implemented or executed a policy,
statement, ordinance, regulation or decision
officially adopted or promulgated by those entity
Defendants; or (3) were pursuant to a custom of said
entity Defendants.

FAC ¶ 70.

In support of his eighth cause of action (which, as

discussed below, is not viable as a stand-alone § 1983 claim

because it fails to name a specific constitutional right that has

been violated, but nevertheless contains allegations which can

support Plaintiff's other <u>Monell</u> claims), Plaintiff makes the

following allegations:

96.   Both before and after January 2, 2014, the Tehama
County Sheriff's Department tolerated, permitted,
failed to correct, and exonerated practices on the
part of their deputies including Deputy McCullough and
others in their unjustified, unreasonable,
unconstitutional, and illegal uses of police protocol
resulting in the deprivation of Plaintiff's, and other
persons similarly situated, constitutional rights,
especially their liberty rights, as hereinabove
described.

97. Defendant Tehama County Sheriff's Department took
no steps to appropriately discipline, remediate,
counsel, retrain or terminate the employment of, or
otherwise correct the officers and employees with
regard to the safe an[d] appropriate use of police
procedures regarding traffic stops, arrests, and
detentions.  As a result, the Tehama County Sheriff's
Department, under color of law, approved or ratified
such conduct, and maintained the custom and practice
of deliberate indifference to unjustified,
unreasonable, and illegal deprivation of
constitutional rights and other forms of
unconstitutional conduct.

FAC ¶¶ 96-97.

Contrary to Plaintiff's argument, these allegations are

27

1    conclusory.  Although Plaintiff uses <u>Monell</u> buzzwords, such

2    as "policy" and "custom," he supplies no supporting factual

3    allegations whatsoever.  Conspicuously absent from the FAC

4    are any detailed allegations as to the specific policy or

5    custom that Defendant County implemented or allowed to

6    exist, or how exactly Defendant County's training program

7    was constitutionally deficient.  In the absence of

8    supporting factual allegations, Plaintiff's <u>Monell</u> claim for

9    violation of the Due Process Clause of the Fourteenth

10   Amendment is not viable.  <u>See</u> <u>Brooks</u>, 197 F.3d at 1247

11   (approving the dismissal of a <u>Monell</u> claim, on the grounds

12   that "the complaint did not allege a deliberate County

13   policy with sufficient particularity").

14        <u>Leatherman</u>, cited by Plaintiff, merely holds that a

15   "heightened pleading standard" – akin to that applied to

16   claims grounded in fraud, pursuant to Rule 9(b) of the

17   Federal Rules of Civil Procedure – does not apply to <u>Monell</u>

18   claims.  This does not contradict the requirement that a

19   plaintiff plead a municipal policy in a non-conclusory

20   manner, and, to the extent it does, <u>Leatherman</u> was overruled

21   by the Supreme Court's subsequent rulings in <u>Twombly</u> and

22   <u>Iqbal</u>.  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007);

23   <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).

24        Accordingly, County Defendants' motion to dismiss

25   Plaintiff's second cause of action, brought pursuant to § 1983

26   for violation of the Due Process Clause of the Fourteenth

27   Amendment, is GRANTED WITH LEAVE TO AMEND, insofar as Plaintiff

28   has attempted to state a <u>Monell</u> claim against Defendant County.

1

2              c.   Third and Fourth Causes of Action - § 1983
                    (Fifth Amendment) against Defendant
3                   McCullough and Defendant County

4        County Defendants argue that Plaintiff's § 1983 claims,

5   which allege a violation of the Due Process Clause of the *Fifth*

6   Amendment, must be dismissed because claims for unconstitutional

7   pretrial detention are analyzed under the Fourteenth Amendment

8   alone.  County Mot. at 7.  Plaintiff does not respond to this

9   argument.  Because "post-arrest incarceration is analyzed under

10  the Fourteenth Amendment alone," County Defendants' motion to

11  dismiss Plaintiff's third and fourth causes of action is GRANTED

12  WITHOUT LEAVE TO AMEND, to the extent these causes of action are

13  brought against Defendant McCullough or Defendant County.  Rivera

14  v. Cnty. of Los Angeles, 745 F.3d 384, 389-90 (9th Cir.).

15             d.   Fifth and Sixth Causes of Action - § 1983
                    (Eighth Amendment) against Defendant
16                  McCullough and Defendant County

17       County Defendants argue that Plaintiff's § 1983 claims,

18  which allege a violation of the Eighth Amendment, must be

19  dismissed because the Eighth Amendment only protects those who

20  have been *convicted* of a criminal offense.  County Mot. at 7.

21  Plaintiff does not respond to this argument.  Because "[c]laims

22  by pretrial detainees are analyzed under the Fourteenth Amendment

23  Due Process Clause, rather than under the Eighth Amendment,"

24  County Defendants' motion to dismiss Plaintiff's fifth and sixth

25  causes of action is GRANTED WITHOUT LEAVE TO AMEND, to the extent

26  these causes of action are brought against Defendant McCullough

27  or Defendant County.  Frost v. Agnos, 152 F.3d 1124, 1128 (9th

28  Cir. 1998).

1

            e.    Eighth Cause of Action - § 1983 - against
                  Defendant County

2

3       County Defendants argue that Plaintiff's eighth cause of

4  action must be dismissed because it is brought pursuant to § 1983

5  but is "not based on any identifiable constitutional or statutory

6  provision, and thus is without legal foundation."  County Mot. at

7  13.  Plaintiff does not respond to this argument.  It is well-

8  established that "Section 1983 is not itself a source of

9  substantive rights, but merely provides a method for vindicating

10  federal rights elsewhere conferred."  Tatum, 768 F.3d at 814.

11  Without naming a specific constitutional right that has been

12  violated, Plaintiff's eighth cause of action cannot stand on its

13  own, and County Defendants' motion to dismiss Plaintiff's eighth

14  cause of action is GRANTED WITHOUT LEAVE TO AMEND.  However, the

15  allegations contained therein - which roughly take the shape of a

16  "failure to train" Monell claim - can be (and were) considered

17  with regard to the sufficiency of Plaintiff's Monell claim,

18  alleging a violation of the Due Process Clause of the Fourteenth

19  Amendment.

20

            f.    Ninth Cause of Action - Intentional
                  Withholding of Evidence - against Defendant

21                      McCullough

22       County Defendants argue that Plaintiff's ninth cause of

23  action for intentional withholding of evidence must be dismissed

24  because Defendant McCullough is immune under California

25  Government Code § 821.6.  County Mot. at 15.  Plaintiff responds

26  that Defendant McCullough is not immune under § 821.6 because he

27  was not "instituting or prosecuting" a judicial proceeding.  Opp.

28  to County at 13.

1    Section 821.6 of the California Government Code provides

2  that "[a] public employee is not liable for injury caused by his

3  instituting or prosecuting any judicial or administrative

4  proceeding within the scope of his employment, even if he acts

5  maliciously and without probable cause."  As noted by one

6  California court, "the provision encompasses conduct during an

7  ongoing prosecution and not solely that leading up to the

8  institution of a prosecution."  Randle v. City & Cnty. of San

9  Francisco, 186 Cal.App.3d 449, 456 (Ct. App. 1986).  Accordingly,

10  public employees are entitled to immunity under § 821.6 for "the

11  suppression of evidence . . . by the [investigating] police

12  officer in failing to bring the report to the prosecutor's

13  attention[.]"  Randle, 186 Cal.App.3d at 457.  As this is exactly

14  what Plaintiff alleges Defendant McCullough did, County

15  Defendants' motion to dismiss Plaintiff's ninth cause of action

16  is GRANTED WITHOUT LEAVE TO AMEND.

17            g.    Eleventh Cause of Action – NIED – against
                    Defendant McCullough
18

19    County Defendants argue that Plaintiff's eleventh cause of

20  action for negligent infliction of emotional distress must be

21  dismissed because Defendant McCullough is immune under California

22  Government Code § 821.6.  County Mot. at 15.  Plaintiff responds

23  that the "injuries caused by [Defendant McCullough] were not from

24  'instituting or prosecuting'" a judicial proceeding within the

25  meaning of §821.6.  Opp. to County at 13.

26    As noted above, § 821.6 of the California Government Code

27  immunizes public employees from suits for injuries caused by the

28  employee's "instituting or prosecuting" a judicial or

31

1   administrative proceeding.  Randle, 186 Cal.App.3d at 456.  One

2   California court has noted that "[a]n investigation before the

3   institution of a judicial proceeding is part of the prosecution

4   of a judicial proceeding for purposes of the statute[.]"  Gillan

5   v. City of San Marino, 147 Cal.App.4th 1033, 1048 (2007), as

6   modified on denial of reh'g (Feb. 21, 2007).  Moreover, immunity

7   under § 821.6 "extends to other causes of action arising from

8   conduct protected under the statute, including . . . intentional

9   infliction of emotional distress."  Id. at 1048.  As Defendant

10  McCullough's investigation is the source of Plaintiff's claim for

11  negligent infliction of emotional distress, he is entitled to

12  immunity under § 821.6.  County Defendants' motion to dismiss

13  Plaintiff's eleventh cause of action is GRANTED WITHOUT LEAVE TO

14  AMEND, insofar as the claim is brought against Defendant

15  McCullough.

16              h.   Twelfth Cause of Action – False Imprisonment
                     – against Defendant McCullough and Defendant
17                   County

18       County Defendants argue that Plaintiff's twelfth cause of

19  action for false imprisonment must be dismissed because County

20  Defendants were "entitled to rely on CHP Officer Fischer's

21  facially-valid probable cause declaration to detain Gardner in

22  jail" until his arraignment and, after Plaintiff's arraignment,

23  he "was held in jail pursuant to a court order requiring bail for

24  release, and was promptly released after the charges were

25  dismissed."  County Mot. at 14.  County Defendants cite

26  California Code of Civil Procedure § 262.1 and California Penal

27  Code § 847(b) in support of their argument.  Plaintiff responds

28  that these statutes only pertain to "peace officers making an

1  arrest," and argue that "Plaintiff's claims are based on

2  McCullough's investigatory actions, not any alleged 'arrest' of

3  Plaintiff by this defendant."  Opp. to County at 12.

4  Under California law, false imprisonment is the "unlawful

5  violation of the personal liberty of another, the interference

6  being absolutely unlawful and without color of legal authority."

7  Novoa v. Cnty. of Ventura, 133 Cal.App.3d 137, 142 (Ct. App.

8  1982).  In relevant part, California Penal Code § 847(b) provides

9  immunity to "any peace officer . . . [for] false imprisonment

10  arising out of any arrest [if] the arrest was lawful, or the

11  peace officer, at the time of the arrest, had reasonable cause to

12  believe the arrest was lawful."  Section 262.1 of the California

13  Code of Civil Procedure provides that a "sheriff or other

14  ministerial officer is justified in the execution of, and shall

15  execute, all process and orders regular on their face and issued

16  by competent authority, whatever may be the defect in the

17  proceedings upon which they were issued."

18  Prior to Plaintiff's arraignment, County Defendants could

19  reasonably rely on the probable cause declaration submitted by

20  Defendant Fischer, which appeared valid on its face.  CDRJN, Ex.

21  A.  As a jailer is only "liable for false imprisonment if he knew

22  or should have known of the illegality of the imprisonment,"

23  County Defendants are entitled to immunity for the time Plaintiff

24  spent in custody until his arraignment.  Sullivan v. Cnty. of Los

25  Angeles, 12 Cal. 3d 710, 717-18, (1974); see also, Cal. Pen. Code

26  § 847(b) (quoted above).  Contrary to Plaintiff's argument, this

27  short-term, pre-arraignment detention did arise from Plaintiff's

28  arrest.

1    After Plaintiff's arraignment, the Tehama County Superior
2  Court ordered Plaintiff held on $315,000 bail.   FAC ¶ 43.
3  Accordingly, as Plaintiff did not make this payment, County
4  Defendants were entitled to execute this court order by
5  continuing to detain Plaintiff.   Cal. Civ. Proc. Code § 262.1.

6    Plaintiff does not provide any authority for his position
7  that the protections of § 262.1 are limited to "peace officers
8  making an arrest pursuant to process that is regular on its
9  fac[e]."  Opp. to County at 12.   Indeed, the Ninth Circuit has
10 applied § 262.1 to a sheriff executing an order of confinement,
11 finding that immunity applied because the sheriff had no duty to
12 investigate the facts underlying the order of confinement.
13 Clemmons v. City of Long Beach, 283 F. App'x 487, 488 (9th Cir.
14 2008).   In light of the Tehama County Superior Court's order that
15 Plaintiff be detained, Plaintiff cannot state a claim for false
16 imprisonment against the Sheriff or any other County officer with
17 the authority to release Plaintiff.

18   Although Defendant McCullough certainly had a duty to
19 investigate the facts underlying the order of confinement,
20 Plaintiff has not – and cannot – allege that the deputy sheriff
21 tasked with investigating the underlying charges had the
22 authority to release him.   Rather, Defendant McCullough's duty
23 was to turn over compelling exculpatory information to the
24 prosecutor, and the alleged breach of this duty is appropriately
25 raised in Plaintiff's substantive due process claim.   For this
26 reason, Plaintiff has failed to state a claim for false
27 imprisonment against Defendant McCullough.

28   Although Defendant County can be held liable pursuant to

34

1   § 815.2(a) of the California Government Code, on a theory of

2   respondeat superior liability, such a claim must be supported by

3   a valid state law claim against an individual County employee.

4   As Plaintiff has failed to state a claim against Defendant

5   McCullough for false imprisonment, he has necessarily also failed

6   to state a claim against Defendant County.  Therefore, County

7   Defendants' motion to dismiss Plaintiff's twelfth cause of action

8   is GRANTED WITHOUT LEAVE TO AMEND, insofar as the claim is

9   brought against both Defendant County and Defendant McCullough.

10

11                          III.   ORDER

12       For the reasons set forth above, as to Defendants CHP and

13  Fischer, the Court GRANTS WITHOUT LEAVE TO AMEND State

14  Defendants' motion to dismiss Plaintiff's second, fourth, sixth,

15  and seventh causes of action against Defendant CHP; DENIES State

16  Defendants' motion to dismiss Plaintiff's tenth and eleventh

17  causes of action against Defendant Fischer; GRANTS WITH LEAVE TO

18  AMEND State Defendants' motion to dismiss Plaintiff's twelfth

19  cause of action against Defendant CHP;

20       As to Defendants Tehama County and McCullough, the Court

21  DENIES County Defendants' motion to dismiss Plaintiff's first

22  cause of action insofar as Plaintiff states a substantive due

23  process claim against Defendant McCullough; GRANTS WITH LEAVE TO

24  AMEND County Defendants' motion to dismiss Plaintiff's second

25  cause of action against Defendant County; GRANTS WITHOUT LEAVE TO

26  AMEND County Defendants' motion to dismiss Plaintiff's third and

27  fourth causes of action against Defendant McCullough and

28  Defendant County; GRANTS WITHOUT LEAVE TO AMEND County

1  Defendants' motion to dismiss Plaintiff's fifth and sixth causes

2  of action against Defendant McCullough and Defendant County;

3  GRANTS WITHOUT LEAVE TO AMEND County Defendants' motion to

4  dismiss Plaintiff's eighth cause of action against Defendant

5  County; GRANTS WITHOUT LEAVE TO AMEND County Defendants' motion

6  to dismiss Plaintiff's ninth cause of action against Defendant

7  McCullough; GRANTS WITHOUT LEAVE TO AMEND County Defendants'

8  motion to dismiss Plaintiff's eleventh cause of action against

9  Defendant McCullough; and GRANTS WITHOUT LEAVE TO AMEND County

10  Defendants' motion to dismiss Plaintiff's twelfth cause of action

11  against Defendant McCullough and Defendant County.

12      Plaintiff's Second Amended Complaint must be filed within

13  twenty (20) days from the date of this Order.  Defendants'

14  responsive pleadings are due within twenty (20) days thereafter.

15  If Plaintiff elects not to file a Second Amended Complaint, the

16  case will proceed consistent with this Order:

17      IT IS SO ORDERED.

18  Dated: July 20, 2015

19

20  JOHN A. MENDEZ,
    UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28